# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                )
TAMECKA MERRICK,                )
                                )
            Plaintiff,          )
                                )
       v.                       )          Civil Action No. 14-1174 (ABJ)
                                )
DISTRICT OF COLUMBIA,           )
                                )
            Defendant.          )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiff Tamecka Merrick brought this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, seeking attorneys' fees and costs totaling $136,044.18 for work completed in support of a successful IDEA administrative action against the District of Columbia Public Schools ("DCPS") on behalf of her minor child. Compl. [Dkt. # 1]. Plaintiff moved for summary judgment. Pl.'s Mot. for Summ. J. [Dkt. # 10] ("Pl.'s Mot."); Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 10] ("Pl.'s Mem."). The Court referred the matter to a Magistrate Judge, who issued a Report and Recommendation suggesting that the Court award plaintiff $64,127.43 in attorneys' fees and costs. R. & R. [Dkt. # 14] at 20–21. Plaintiff filed timely written objections to the Report. Pl.'s Objs. to R. & R. [Dkt. # 15] ("Pl.'s Objs."). Defendant responded to plaintiff's objections, but did not object to any portion of the report, Def.'s Opp. to Pl.'s Objs. [Dkt. # 16] ("Def.'s Resp."), and plaintiff replied. Pl.'s Reply to Def.'s Resp. [Dkt. # 17] ("Pl.'s Reply"). The parties also filed supplemental memoranda in the wake of the D.C. Circuit's recent opinion in *Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015). *See* Pl.'s Mot. for Leave to Suppl. R. [Dkt. # 18] ("Pl.'s Supp. Mot."); Def.'s Resp. to Pl.'s Supp. Mot. [Dkt. # 19] ("Def.'s Supp. Resp.").

After a review of the Report, the parties' filings, the *Eley* decision, and the record in this case, the Court will adopt the Magistrate Judge's recommendations in all but three respects. First, the Court finds that plaintiff's unsuccessful claims at the administrative level do not form the basis for a 10% fee reduction. Second, the Court will not deduct 3.9 hours of work performed by counsel in connection with a meeting held in February 2014. Finally, the Court will not compensate plaintiff's attorney at a rate of $382.50 per hour, a number that the Magistrate Judge reached by reducing the applicable U.S. Attorney's Office ("USAO") *Laffey* Matrix[1] rate of $510.00 per hour by 25%. Instead, the Court finds that plaintiff has carried her burden to show that $510.00 per hour more accurately reflects the reasonable hourly rate for her counsel's time. The Court will therefore grant in part and deny in part plaintiff's motion for summary judgment, and it will enter judgment in the amount of $107,555.43 in favor of plaintiff.

## BACKGROUND

Plaintiff's seventeen-year-old son ("R.W.") is deaf and has been diagnosed with numerous conditions, including bipolar disorder and oppositional-defiant disorder. Hearing Officer Determination [Dkt. # 10-1] ("HOD") ¶¶ 5, 9; Pl.'s Mem. at 1. During the 2011–2012 school year, R.W. attended DCPS Wilson High School ("Wilson"), which had a small program for deaf and hard-of-hearing students. HOD ¶ 16; Pl.'s Mem. at 2. Although Wilson provided R.W. with an interpreter for his mainstream classes, R.W. struggled academically. HOD ¶ 16. R.W. became frustrated by a constant need to look back and forth between the interpreter, the teacher, and the

---

1       The *Laffey* Matrix is "a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985)." *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995). The version of the *Laffey* Matrix that is relevant in this case is the one that is maintained and periodically updated by the United States Attorney's Office for the District of Columbia. The version of that *Laffey* Matrix that is referenced in this case is available at http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf.

board. *Id.* This challenge, coupled with R.W.'s inability to communicate with other students, caused his anger to surface. *Id.* At the end of January 2012, R.W.'s behavior escalated to the point that he required emergency psychiatric hospitalization, and in February, R.W.'s insurance carrier moved him to an out-of-state treatment center, where he remained until November 2012. *Id.* ¶ 17.

Upon release from the treatment center, R.W. entered DCPS Anacostia High School ("Anacostia"). HOD ¶ 18; Pl.'s Mem. at 2. R.W. was the first deaf student to attend Anacostia, and the school was unable to appropriately accommodate him. HOD ¶ 18. Upon DCPS's recommendation, R.W. returned to Wilson, but R.W. continued to struggle. *Id.* ¶¶ 20–21. In June 2013, R.W. was detained on juvenile charges. *Id.* ¶ 22.

Plaintiff filed an administrative complaint with the assistance of counsel on August 2, 2013. *See* HOD at 1. She was represented by Pierre Bergeron, a solo practitioner, who was occasionally assisted by Pamela Roth, another solo practitioner. *See* Services & Expenses, Ex. 5 to Pl.'s Mot. [Dkt. # 10-5] ("Services & Expenses"). Plaintiff alleged that DCPS had denied R.W.'s right to a free appropriate public education ("FAPE"), *see* HOD at 1, and she advanced four specific arguments:

1. DCPS failed to "timely and accurately provide evaluations/ reevaluations in all areas of suspected disabilities." *Id.*

2. DCPS failed to "timely identify the seriousness of the emotional and deaf disabilities and other health impairment . . . with the result that [R.W.] deteriorated and continued to be repeatedly sent home early." *Id.*

3. DCPS failed to "provide and implement an appropriate individualized education plan." *Id.*

4. DCPS failed to "provide an appropriate placement and location of services" for R.W. *Id.*

3

Plaintiff sought two forms of relief:  "(i) Placement in a full-time residential treatment center," and "(ii) compensatory education."  *Id.* at 2.

On September 6, 2013, before the administrative hearing had occurred, DCPS convened a meeting and determined that R.W.'s individualized education plan ("IEP") should be updated to provide for residential placement.  HOD ¶ 7.  But by the date of the administrative hearing, October 1, 2013, DCPS still had not found a residential facility for R.W., *see id.* at 1, ¶ 8, and the child remained in juvenile detention.  *Id.* at 1–2.

On October 16, 2013, the Hearing Officer granted plaintiff all the relief she requested.  *See* HOD at 11–12.  The Hearing Officer ordered DCPS to convene an IEP meeting within ten days to select a residential placement for R.W., and further ordered DCPS to place R.W. at that facility for the remainder of the 2013–2014 school year.  *Id.* ¶¶ 29–30.  The Hearing Officer also granted plaintiff's request for compensatory education.  *Id.* at 11–12.  Pursuant to the Hearing Officer's order, R.W. was placed in a residential facility in December 2013.  R. & R. at 11.

Although plaintiff received the relief she sought, the Hearing Officer did not accept all four of her arguments.  HOD at 7–12.  As to plaintiff's first claim, the Hearing Officer found that plaintiff did not meet her burden to prove that DCPS failed to timely "evaluate/reevaluate" her son.  *Id.* at 7–8.  The Hearing Officer further found that plaintiff's second argument – that DCPS failed to identify the seriousness of R.W.'s disabilities – was not a separate claim, but rather should be considered in the context of plaintiff's third and fourth claims.  *Id.* at 8.  As to the third claim, the Hearing Officer found that plaintiff had proven that DCPS denied R.W. a FAPE by "failing to provide him with an appropriate IEP on April 10, 2013," but that she did not "meet [her] burden of proof on the implementation aspect of this claim."  *Id.* at 9–10.  And as to the fourth claim, the Hearing Officer concluded that plaintiff prevailed on the issue of denial of a FAPE regarding

placement and location of services only insofar as Wilson and Anacostia were not appropriate schools for R.W.[2] *Id.* at 10–11.

Plaintiff brought an action in this Court seeking an award of $136,044.18 for 269.2 hours of work plus costs.[3] *See* R. & R. at 1, 20; Pl.'s Mem. at 12; Services & Expenses at 1. Plaintiff filed a motion for summary judgment, and the Court referred the matter to a Magistrate Judge, who issued a Report and Recommendation on March 23, 2015. R. & R. The Magistrate Judge recommended reducing plaintiff's award to $64,037.25 in fees and $90.18 in costs on several grounds. *Id.* at 20–21.

First, the Magistrate Judge recommended that plaintiff not be reimbursed for 3.9 hours billed by counsel related to an IEP meeting in February of 2014. *Id.* at 11–12. The Magistrate Judge then divided the remaining 265.3 hours into three categories – legal work, clerical work, and travel time – and recommended compensating each at a different rate. *Id.* at 20–21. For the legal work, the Magistrate Judge recommended a rate of $382.50 per hour, or 75% of the applicable *Laffey* Matrix rate of $510.00, to account for what he viewed as the reduced complexity of the case. *Id.* at 18. In addition, the Magistrate Judge found that plaintiff's counsel had billed for six hours of travel, and recommended awarding fees for that time at half of 75% of the *Laffey* rate, or $191.25 per hour. *Id.* at 19. Finally, the Magistrate Judge found that counsel billed 54.6 hours for

---

2      Plaintiff had also asserted that R.W. had been denied a FAPE when he was placed at the out-of-state treatment facility, but the Hearing Officer found that she had failed to show that R.W. did not receive appropriate educational services there. HOD at 10.

3      "Page 1" of the billing statement appears on the last page of the document filed on the docket. *See* Services & Expenses. The complaint seeks an award of $137,441.18, Compl. ¶ 21, but plaintiff's motion for summary judgment, Pl.'s Mem. at 12, the Magistrate Judge's Report, R. & R. at 1, plaintiff's objections to the Report, Pl.'s Objs. at 1, and counsel's billing statement, Services & Expenses at 1, all reflect the $136,044.18 figure.

clerical and administrative tasks, for which he recommended reimbursement at 75% of the *Laffey* rate for a paralegal, or $108.75 per hour.  *Id.* at 20.

The Magistrate Judge further recommended a 10% reduction to account for plaintiff's failure to succeed on every claim she advanced at the administrative hearing.  R. & R. at 10.  In addition, the Magistrate Judge recommended a reduction of 15% for "unnecessary" work, including the preparation of an amended complaint; five motions to amend a single filing; the filing of a motion to expedite the hearing, followed by a motion to continue, followed by a second motion to expedite; and "several other amendments to existing documents."  *Id.* at 13–14.  All of these reductions brought the total fee award to $64,037.25.  *Id.* at 21.

With respect to costs, the Magistrate Judge recommended reducing the reimbursement rate for certain copies from $0.25 to $0.15, resulting in a cost award of $90.18.  R. & R. at 20.

On April 6, 2015, plaintiff filed objections to all of the Magistrate Judge's recommendations except the 50% reduction of the attorneys' fee rate for travel time and the $90.18 award for costs.  Pl.'s Objs.  Defendant did not file objections of its own, and it asks the Court to adopt the Magistrate Judge's Report in its entirety.  Def.'s Resp.

On July 10, 2015, the D.C. Circuit issued an opinion in *Eley v. District of Columbia* that addressed the evidentiary showing a plaintiff must make in order to establish the amount of attorney's fees to which she is entitled.  *See* 793 F.3d at 104–05; *see also* 20 U.S.C. § 1415(i)(3)(C) (entitling a prevailing parent to attorneys' fees "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").  In that decision, the Court of Appeals underscored the principle that a fee applicant bears the burden of producing satisfactory evidence that the requested rates are in line with the prevailing rates in the

community, and it gave examples of the types of evidence that must be provided.  793 F.3d at 104–05.

In light of *Eley*, on July 13, 2015, plaintiff filed a motion for leave to supplement the record in this case with declarations from seven attorneys attesting to the rates they charge and are awarded for IDEA cases.  Pl.'s Supp. Mot.  The Court granted plaintiff's motion on July 14, 2015, and granted defendant leave to file a brief response.  Min. Order (July 14, 2015).  Defendant filed that response on July 16, 2015.  Def.'s Supp. Resp.[4]

## STANDARD OF REVIEW

When a party objects to a Magistrate Judge's recommendations, the Court reviews *de novo* the portion of the report to which the party has objected.  Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c); *Smith v. District of Columbia*, 846 F. Supp. 2d 197, 199 (D.D.C. 2012); *D.D. ex rel. Davis v. District of Columbia*, 470 F. Supp. 2d 1, 1 (D.D.C. 2007).  The Court may "accept, reject, or modify" the Magistrate Judge's recommendations.  Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c).

Under the IDEA, a court has the discretion to "award reasonable attorneys' fees as part of the costs . . . to a prevailing party" in an administrative proceeding "who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  Therefore, if a court determines that the plaintiff seeking attorneys' fees is a prevailing party, it must determine whether the requested attorneys' fees are reasonable.  *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C.

---

[4]     Plaintiff's July 13, 2015 motion also drew the Court's attention to a second D.C. Circuit opinion that was issued during the pendency of this case, *Price v. District of Columbia*, 792 F.3d 112 (D.C. Cir. 2015).  Pl.'s Supp. Mot. at 1–2.  In *Price*, the Court of Appeals held that "[t]he $90 per hour statutory compensation rate in the D.C. Criminal Justice Act did not preempt the prevailing-rate determination required in IDEA fee shifting, nor is it an appropriate factor to consider in making the prevailing-rate determination."  792 F.3d at 116.  In its response to plaintiff's motion, defendant withdrew the argument that the $90 per hour statutory compensation rate should apply in this case.  Def.'s Supp. Resp. at 1.

2010); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts typically assess the reasonableness of attorneys' fees based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Jackson*, 696 F. Supp. 2d at 101, quoting *Hensley*, 461 U.S. at 433. This is sometimes called the "lodestar" method. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). The plaintiff bears the burden of establishing both the reasonableness of the hourly rate and the reasonableness of the number of hours spent on a particular task. *Eley*, 793 F.3d at 100, 104; *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995).

## ANALYSIS

### I.    A 10% reduction is not warranted because plaintiff won all of the relief she sought.

Although the Magistrate Judge found that plaintiff "accomplished relief she sought at the administrative level," he recommended reducing her fee award by 10% to account for her failure to prevail on all of her individual claims. R. & R. at 9–10. The Court finds that this reduction would be unwarranted given that plaintiff was awarded all of the relief she requested.

Under the IDEA, a court may "award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433, quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978). The Court may reduce a prevailing party's attorney's fee "if the relief . . . is limited in comparison to the scope of the litigation as a whole." *Id.* at 440. But in a case with both successful and unsuccessful claims, if "the unsuccessful claim could not have given relief beyond the scope of the successful claim, the fact of failure is not an independent basis for a reduction." *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1387 n.12 (D.C. Cir. 1995), *decision clarified on denial of reh'g*, 74 F.3d 300 (D.C. Cir. 1996).

In this case, plaintiff obtained all of the relief she sought at the administrative hearing.  She was plainly the prevailing party, and her "unsuccessful claim[s] could not have given relief beyond the scope of the successful claim[s]."  *See id.*; *see also Hensley*, 461 U.S. at 433.  The Court therefore rejects the Magistrate Judge's recommendation to reduce plaintiff's counsel's fee by 10% for failure to prevail on all of her claims.

**II.    Plaintiff failed to establish her entitlement to fees for 24.8 hours of counsel's work.**

The Magistrate Judge recommended reducing plaintiff's attorneys' fee by 15% to account for work that he deemed unnecessary, including five different motions to amend a single filing, an amended complaint, two motions to expedite, and a motion to continue.  R. & R. at 13–14.  The Court agrees that a reduction is appropriate based on plaintiff's failure to show that some of her counsel's work was reasonably necessary, and it will disallow 24.8 hours billed by counsel.

The IDEA grants the Court discretion to "award *reasonable* attorneys' fees" to a parent who prevails in an administrative proceeding.  20 U.S.C. § 1415(i)(3)(B)(i)(I) (emphasis added).  Therefore, when, as here, a court determines that the plaintiff seeking fees is a prevailing party, it must also determine whether the requested fees are reasonable.  *Jackson*, 696 F. Supp. 2d at 101; *see also Hensley*, 461 U.S. at 433.  The fee applicant bears the burden of establishing its entitlement to an award, *see Hensley*, 461 U.S. at 437; *In re North*, 59 F.3d at 189, and she must provide an account of the time spent that is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (emphasis omitted), quoting *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).

The record reflects that the Hearing Officer denied many of the motions the Magistrate Judge found to be unnecessary. *See* Order (Sept. 16, 2013), Ex. 1 to Def.'s Resp. [Dkt. # 16-1] ("HO Order") (denying plaintiff's motion to continue, plaintiff's first, second, third, fourth, and fifth motions to amend her opposition to respondent's motion for summary adjudication, and plaintiff's motion to expedite); *see also* R. & R. at 13. In the order denying the motions, the Hearing Officer observed that several of plaintiff's motions to amend her opposition contained authority that plaintiff could have included in the original motion, *see* HO Order at 2–3, and that two of the motions to amend constituted mere status updates. *Id.* at 3 n.1. As to plaintiff's other motions, the Hearing Officer's order explains that plaintiff initially requested an expedited hearing, but on August 28, 2013, filed a motion to continue on the grounds that her expert witness would be unavailable. *Id.* at 2; *see also* R. & R. at 13. On September 10, 2013, plaintiff filed a new motion to expedite, arguing that the urgency of R.W.'s situation demanded a speedier resolution. HO Order at 2.

Plaintiff has offered little in response to the Magistrate Judge's recommendation or the Hearing Officer's order to support her claim that the motions were necessary. Plaintiff suggests that the case was especially complicated because R.W. entered juvenile detention in June 2013, HOD at 6, ¶ 22, allowing DCPS to argue that the District of Columbia juvenile authorities bore complete responsibility for R.W.'s education. Pl.'s Reply at 4–5. But plaintiff offers no evidence beyond her own conclusory assertions that the additional motions and amendments were necessitated by those factors. *See id.*

Nor does plaintiff's counsel's billing record provide a sufficient explanation. The invoice contains single-line, shorthand entries such as: "draft 4th amendment to oppositio - toDism," and "drft 2nd motion to expedite hrin." *See* Services & Expenses at 9–10. These descriptions are too

vague to justify an award of fees for work that otherwise appears to have been unnecessary.  *See*
*Michigan v. U.S. EPA*, 254 F.3d 1087, 1093–95 (D.C. Cir. 2001) (reducing fees for billing entries
"devoid of any descriptive rationale for their occurrence"); *In re North,* 12 F.3d 252, 257 (D.C.
Cir. 1994) (reducing fees where documentation was not detailed enough to allow the court to
ascertain the reasonableness of time spent).

Therefore, the Court finds that plaintiff has not met her burden to establish an entitlement
to fees for the hours spent on the work that the Magistrate Judge identified as unnecessary.  *See*
*Hensley*, 461 U.S. at 437; *In re North*, 59 F.3d at 189.  The Court conducted a *de novo* review of
the billing statement, and it finds that plaintiff's counsel performed 24.8 hours of work on the five
motions to amend the filing, the amended complaint, and the motions to continue and to expedite.
*See* App. A (detailing the portions of counsel's billing statement that reflect unnecessary work).
Accordingly, the Court will not award plaintiff fees for those hours.

## III.   Plaintiff is entitled to fees for 3.9 hours related to the 2014 IEP meeting.

Under the IDEA, "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP
Team unless such meeting is convened as a result of an administrative proceeding or judicial
action." 20 U.S.C. § 1415(i)(3)(D)(ii).  In this case, the Hearing Officer ordered DCPS to convene
an IEP meeting "[w]ithin 10 calendar days" of her final decision, HOD ¶ 29, and the Magistrate
Judge found that "the mandated IEP meeting was completed in November 2013."  R. & R. at 11.
For that reason, and because R.W. was placed in a residential facility in December of 2013, the
Magistrate Judge did not recommend awarding fees for 3.9 hours counsel billed with respect to an
IEP meeting that occurred in February 2014.  *Id.* at 11–12.

Plaintiff argues that the February meeting was a continuation of the mandated IEP meeting,
and that a fee award for the 3.9 hours is therefore appropriate.  Pl.'s Objection at 6–7.  And plaintiff

has provided uncontested evidence that indicates that the February meeting resulted from the parties' inability to reach an agreement on R.W.'s IEP in November.  Educational Report to the Superior Court of the District of Columbia, Family Division – Juvenile Branch, Ex. 1 to Pl.'s Objs. [Dkt. # 15-2] at 1 (describing the disagreement between plaintiff and DCPS over the IEP). Accordingly, the Court finds that the February IEP meeting was "convened as a result of an administrative proceeding," *see* 20 U.S.C. § 1415(i)(3)(D)(ii), and that plaintiff is entitled to fees for the 3.9 hours of legal work performed in connection with that meeting.

**IV.    The reasonable hourly rate for plaintiff's counsel's legal services is $510 per hour.**

As the D.C. Circuit underscored in the recent *Eley* decision, plaintiff bears the burden of establishing the reasonableness of her attorneys' requested hourly rate.  793 F.3d at 104; *see also In re North*, 59 F.3d at 189.  "Whether an hourly rate is reasonable," the Court stated, "turns on three sub-elements:  (1) 'the attorney['s] billing practices,' (2)  'the attorney['s] skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'"  *Eley*, 793 F.3d at 100, quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  To establish the prevailing market rate, a plaintiff bears "the burden 'to produce satisfactory evidence – *in addition to [her] attorney's own affidavits* – that [her] requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Id.* at 104 (alterations and emphasis in original), quoting *Covington*, 57 F.3d at 1109.  The Court of Appeals further stated that "evidence of the prevailing market rate can take many forms," including fee orders in other cases, market surveys, affidavits by members of the relevant legal community, and standardized fee matrices.  *Id.* at 104 & n.5.

The Court notes that the issue in *Eley* was not whether the prevailing attorney was entitled to be paid at the *Laffey* Matrix rates as they have been regularly updated by the USAO, which are

the rates at issue in this case. Rather, the holding in *Eley* was that the District Court abused its discretion when it approved the use of a competing, higher matrix, the "LSI *Laffey* Matrix," which uses the Legal Services Index of the Bureau of Labor Statistics to adjust for inflation. *Id.* at 101, 105. That matrix provides for rates that are higher than the matrix the USAO maintains and updates, *see id.* at 101–02, and the Court of Appeals held that the evidence submitted by the fee applicant in that case was not sufficient to support a finding that the LSI *Laffey* Matrix rates were in line with those prevailing in the community for similar services. *Id.* at 105. So, while the procedure outlined in *Eley* is to be followed in this case, the holding is limited to the factual showing and the particular fee schedule that were before the Court at the time.

In addition, the Court of Appeals expressly declined to weigh in on the question of whether IDEA litigation is or is not sufficiently complex to warrant the use of either matrix, *see id.*, although, in a brief concurring opinion, Judge Kavanaugh expressed his opinion that "the United States Attorney's Office *Laffey* matrix is appropriate for IDEA cases." *Id.* (Kavanaugh, J., concurring); *see also id.* at 102 (noting that the District had "cited over forty cases in which district courts had awarded attorneys' fees awards in IDEA cases based on prevailing market rates set at (or below) the USAO *Laffey* Matrix").

In this case, the Magistrate Judge determined that plaintiff "proffered evidence to establish her attorneys' experience, skill, and reputation in IDEA matters," R. & R. at 15, and that "counsel's knowledge of IDEA law, experience, and understanding of the procedural aspects of

13

administrative hearings helped counsel to obtain the relief sought by Plaintiff."[5]  *Id.* at 17.  The

Magistrate Judge nevertheless found that a 25% reduction in the *Laffey* Matrix rate was appropriate

in light of the level of complexity of the underlying administrative proceeding.  *Id.* at 17–18.

Plaintiff asks the Court to reject this recommendation and adopt the full *Laffey* rate as the

prevailing market rate for plaintiff's counsel's services.  Pl.'s Objs. at 7–11.

In discounting the *Laffey* rate by 25%, the Magistrate Judge embraced an approach similar

to that of the court in *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 108–10 (D.D.C. 2014),

*amended by* 53 F. Supp. 3d 55 (D.D.C. 2014).  In *McAllister*, also an IDEA fees case, the court

declined to award full *Laffey* rates because the litigation "revolved around a number of routine

administrative hearings, many of which involved similar claims and identifiable requests for

relief."  *Id.* at 109; *see also Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 61 (D.D.C. 2011)

(treating *Laffey* rates as a "presumptive maximum" for federal litigators' services in the District of

Columbia).  Applying this approach, the Magistrate Judge recommended a 25% reduction in the

*Laffey* rate to reflect his finding that the Due Process hearing does not appear to have presented

"any significant challenges," and that "a significant portion of counsel's time in this matter was

spent searching for and contacting potential residential treatment centers for R.W."  R. & R. at 17–

18.

Although some courts in this District have adopted a similar approach, others "ha[ve]

rejected the suggestion that IDEA administrative litigation is categorically less complex than other

---

5      Plaintiff's attorney Pierre Bergeron has over thirty years of experience as a lawyer, including twenty in the field of special education law.  V.S. of Pierre Bergeron, Esq., Ex. 2 to Pl.'s Mot. [Dkt. # 10-2] ¶¶ 4–5.  In addition, attorney Pamela Roth, who contributed a small number of hours to the case, has practiced law in the District of Columbia for twenty-eight years, with the last fifteen focused primarily on special education and IDEA cases.  V.S. of Pamela Roth, Esq., Ex. 3 to Pl.'s Mot. [Dkt. # 10-3] ¶¶ 4–5.

forms of litigation, and reaffirm[ed] that IDEA cases are sufficiently complex to allow application of the *Laffey* Matrix." *Irving v. D.C. Public Schs.*, 815 F. Supp. 2d 119, 129 (D.D.C. 2011), citing *Jackson*, 696 F. Supp. 2d at 102; *see also Eley v. District of Columbia*, 999 F. Supp. 2d 137, 156–62 (D.D.C. 2013), *overruled on other grounds*, 793 F.3d at 105; *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 74–75 (D.D.C. 2011).  Those courts recognize that IDEA cases "take a variety of different litigation paths" and "cannot be dismissed as categorically routine or simple." *Thomas v. District of Columbia*, 908 F. Supp. 2d 233, 243 (D.D.C. 2012).  IDEA cases "require testimony from education experts regarding whether a student has been denied a free and public education," *Jackson*, 696 F. Supp. 2d at 102, and plaintiffs' counsel must "understand the bureaucratic workings of [DCPS]," *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 76 (D.D.C. 2010), and become conversant with a wide range of disabling cognitive, emotional, and language-based disorders and the corresponding therapeutic and educational approaches.  The declarations supplied by plaintiff detail the complexity of special education litigation.  *See* Decl. of Diana M. Savit, Esq. [Dkt. # 18-1] ("Savit Decl.") ¶¶ 13–14 (describing the particular challenges that arise in special education cases); Decl. of Charles Moran, Esq. [Dkt. # 18-3] ("Moran Decl.") ¶¶ 6–8 (describing the frequent delays, unrealistic settlement offers, and time-consuming fee litigation that increase the complexity of IDEA cases).  As a result, those courts find that IDEA litigation is sufficiently complex to warrant full *Laffey* rates.

In keeping with those decisions, this Court rejects the Report's recommendation to reduce the *Laffey* rate by 25% to account for a lack of complexity in the underlying administrative proceedings.  Since an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice.  *See, e.g.*, *Eley*, 999 F. Supp. 2d at 160 ("[T]he

complexity of the case is accounted for by the number of hours expended and should not be accounted for by a blunt reduction of rates before applying the rates to the number of hours expended.").

The Court further finds that plaintiff has carried her burden to establish that her requested rate reflects the "rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *See* 20 U.S.C. § 1415(i)(3)(C); *Eley*, 793 F.3d at 99. First, the Court notes that, according to the D.C. Circuit, the USAO *Laffey* Matrix itself is "one type of evidence that 'provide[s] a useful starting point' in calculating the prevailing market rate." *Eley*, 793 F.3d at 100, quoting *Covington*, 57 F.3d at 1109. Second, the cases set forth above and those cited by plaintiff in her pleadings provide evidence that attorneys performing similar work in similar cases have been paid at the full USAO *Laffey* rate. *See* Pl.'s Objs. at 8; *see also Eley*, 793 F.3d at 104 & n.5.

Third, plaintiff has submitted seven affidavits from practitioners in the community that support the assertions that, (1) IDEA cases often constitute complex civil litigation, and (2) USAO *Laffey* rates are appropriate and prevailing rates in the community for this type of case. *See* Savit Decl. ¶¶ 13–14 (detailing the complexity of IDEA cases); Decl. of Elizabeth T. Jester, Esq. [Dkt. # 18-2] ¶¶ 3–13 (describing the declarant's "20+" years of experience litigating special education and other civil cases in this community, and averring both that she charges *Laffey* rates, and that her rates have been found to be reasonable by other courts in this District); Moran Decl. ¶¶ 3–8 (describing the declarant's 25 years of experience in special education law and with IDEA cases, stating that his "firm previously set its rates according to the USAO *Laffey* Matrix, but on January 1, 2014 those rates were adjusted to align with the Legal Services Index *Laffey* Matrix," and describing the complexity of IDEA cases); Decl. of Carolyn Houck, Esq. [Dkt. # 18-4] ¶¶ 3–5

(stating that the declarant has practiced special education law and litigated IDEA cases since 1997, that she has prevailed in approximately 1600 Due Process hearings, and that she "routinely seek[s] rates congruent with the rates prevailing in the community based on the USAO *Laffey* Matrix"); Decl. of Emily B. Read, Esq. [Dkt. # 18-5] ¶¶ 4–6 (stating that attorneys at the Judge David L. Bazelon Center for Mental Health Law have been awarded full USAO *Laffey* Matrix rates); V.S. of Douglas Tyrka [Dkt. # 18-6] ¶¶ 4–5 (stating that the declarant's special education law firm "has always matched its hourly rates to those in what is commonly known as 'the *Laffey* matrix,'" and has charged *Laffey* Matrix rates to paying clients); V.S. of Nicholas Ostrem [Dkt. # 18-7] ¶ 4 (stating that the declarant's special education law firm "has always matched its hourly rates to those in what is commonly known as 'the adjusted *Laffey* matrix,' adjusted for changes in the legal services component of the Consumer Price Index").

In consideration of the evidence plaintiff put forth to establish the prevailing market rates in the community for this and other types of cases, as well as plaintiff's counsel's experience in special education cases, and the complexity of the underlying administrative proceeding, the Court finds that plaintiff has fulfilled her "obligation . . . to demonstrate that her suggested rates were appropriate," and it holds that $510.00 per hour best reflects the reasonable hourly rate for the

legal services provided by plaintiff's counsel.[6]  *See Eley*, 793 F.3d at 105.  The Court will therefore adopt that rate in determining the extent of plaintiff's fee award.[7]

## V.     The Court will award fees at a reduced rate for purely clerical work.

The Magistrate Judge determined that plaintiff's counsel spent 54.6 hours on "clerical and administrative tasks rather than legal tasks," including "scanning, copying, paginating, faxing, forwarding, and filing."  R. & R. at 19–20.  He recommended that plaintiff's counsel be compensated at a reduced rate of $108.75 per hour for that work, which constitutes 75% of the $145 *Laffey* rate for paralegals.  *Id.* at 20; *see also Laffey* Matrix, Ex. 6 to Pl.'s Mot. [Dkt. # 10-6]. Plaintiff objects that the Magistrate Judge's recommendation "unfairly prejudices solo practitioners and small firms," creates a disincentive for attorneys to take fee-shifting cases, and is contrary to the law.  Pl.'s Objs. at 5–6, citing *Bucher*, 777 F. Supp. 2d at 76, *District of Columbia v. Jeppsen*, 686 F. Supp. 2d 37, 39 (D.D.C. 2010), and *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993).  Defendant argues that the Magistrate Judge's recommendation of a lower billing rate for clerical tasks is reasonable.  Def.'s Resp. at 10.

---

6     Although plaintiff originally requested a rate of $505.00 per hour, the Magistrate Judge found that "[t]he correct *Laffey* rate is actually $510 for June 1, 2013 through May 31, 2014."  R. & R. at 15 n.13.  Since neither party has objected to this finding, the Court will apply the rate of $510.00 per hour.

7     The Court notes that, in *Eley*, the Court of Appeals stated that "evidence of the prevailing market rate can take many forms," and suggested that a market survey might also be a persuasive form of evidence.  793 F.3d at 104 n.5.  But, given the existence of the fee-shifting statute in cases like this one and the relative rarity of paying special education clients, one can hardly say that a "market" exists for services similar to the services offered in this case.  So, the exercise contemplated by *Eley* will often produce awkward and less-than-ideal results.  There are going to continue to be countless hours wasted by private counsel, DCPS, and the bench litigating not only fee petitions, but also fees-on-fees petitions, until the District and the special education bar sit down in good faith – with or without the assistance of a neutral mediator – and try to hammer out a mutually acceptable presumptive fee schedule that is not as parsimonious and unrealistic as the last one.

As a general matter, clerical and administrative services amount to non-billable overhead. *Michigan v. U.S. EPA*, 254 F.3d at 1095–96; *In re Olson*, 884 F.2d at 1426–27; *see also Jackson v. District of Columbia*, 603 F. Supp. 2d 92, 98 (D.D.C. 2009), *amended by* 696 F. Supp. 2d 97 (D.D.C. 2010).   But courts in this District have also held that a plaintiff should not be penalized for engaging solo practitioners or small law firms that cannot "staff[] [a] case as if they had the manpower of a major law firm." *Bailey*, 839 F. Supp. at 891; *accord Bucher*, 777 F. Supp. 2d at 75–76; *Jeppsen*, 686 F. Supp. 2d at 39.   In accordance with both of these principles, several courts in this District have adopted the middle-ground approach advocated by the Magistrate Judge in this case by awarding solo practitioners and small-firm attorneys fees for clerical work at a reduced rate.   *See, e.g.*, *DeLa Cruz v. District of Columbia*, No. 14-293 (AK), 2015 WL 871527, at *5 (D.D.C. Mar. 2, 2015); *Robinson v. District of Columbia*, 61 F. Supp. 3d 54, 66–67 (D.D.C. 2014); *A.C. ex rel Clark v. District of Columbia*, 674 F. Supp. 2d 149, 157–58 (D.D.C. 2009); *Thomas ex rel A.T. v. District of Columbia*, No. 03-1791 (CKK), 2007 WL 891367, at *11–13 (D.D.C. Mar. 22, 2007).

The Court agrees with the Magistrate Judge that it is appropriate to compensate plaintiff's counsel at a reduced rate for clerical and paralegal-type work.   The Court further finds that the rate the Magistrate Judge recommended, $108.75 per hour, is reasonable, given that much of this work was purely clerical.   *See* App. B (detailing the portions of counsel's billing statement that reflect clerical and paralegal-type work); *see also* R. & R. at 19–20.   The Court conducted a *de novo* review of counsel's billing statements, and it finds that 39 hours were billed for services such as scanning, faxing, paginating, forwarding, and filing.   *See* App. B.   Therefore, the Court will award plaintiff $4,241.25 in fees for the work that it has determined was clerical or administrative.

**VI.    The Court adopts those portions of the Report not objected to by the parties.**

Plaintiff did not object to the Magistrate Judge's 50% reduction of the rate applied to her counsel's travel time, nor did she object to the $8.00 reduction in costs.  In accordance with Local Civil Rule 72.3(c), the Court will adopt those portions of the Magistrate Judge's Report not objected to by either party.  The Court will apply a rate of $255.00 per hour to travel time, equal to 50% of plaintiff's counsel's *Laffey* rate, and will award $90.18 in costs.

<b>CONCLUSION</b>

The Court will calculate the award of attorneys' fees as follows.  From plaintiff's requested 269.2 hours, the Court will subtract 24.8 hours of unnecessary work (Appendix A), 39.0 hours of clerical work (Appendix B), and 6 hours of travel.  The resulting 199.4 hours equal plaintiff's counsel's legal hours.  Applying the rate of $510.00 per hour produces a subtotal of $101,694.00.  The Court will also compensate 39 hours of clerical work at $108.75 per hour and 6 hours of travel at $255.00 per hour to produce subtotals of $4,241.25 and $1,530.00, respectively.  Adding the three subtotals together yields $107,465.25, to which the Court adds $90.18 in costs.  The Court will therefore enter judgment in the amount of $107,555.43 in favor of plaintiff.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 29, 2015

**APPENDIX A: UNNECESSARY WORK**

| Date | Description (*as it appears on plaintiff's invoice*[8]) | Hours |
|---|---|---|
| 7/30/13 | Revw supporting documentatnFr – ExpeditMtn | 0.3 |
| 7/30/13 | drft motion for expedited hrng | 1.0 |
| 7/30/13 | revw+revise mtn to expedite – hrng | 0.3 |
| 8/4/13 | Scan+reviw scan of motion to expedite | 0.1 |
| 8/4/13 | File motion to expedite hearing | 0.1 |
| 8/5/13 | Download oppostion to Mtn - ExpeditedHrn | 0.1 |
| 8/5/13 | Review opposition to motion fo - Expedited | 0.2 |
| 8/5/13 | Booker- consults on respon - T - DCPS Oppo | 0.4 |
| 8/5/13 | identify issues in DCPS OppstnTO - Expedit | 0.3 |
| 8/5/13 | draft reply to opposition to - mtot expec | 1.4 |
| 8/5/13 | review and rvise reply to opposi - toMtn | 0.2 |
| 8/5/13 | Scan reply+review scanned pages | 0.1 |
| 8/5/13 | File reply to dcps opposition | 0.1 |
| 8/15/13 | Roth: parnt+revw order - Denying - ExpedMt | 0.5 |
| 8/19/13 | Roth:prepr amended complnt+file+ - rvwExhi | 3.0 |
| 8/27/13 | review amended complaint filed | 0.2 |
| 8/27/13 | draft motion to amend the opposi - todisms | 1.0 |
| 8/27/13 | revw and revise motin to amend - oppstn | 0.4 |
| 8/27/13 | Paginate the appendix | 0.2 |
| 8/27/13 | Scan motn to amend opposit+check scanPages | 0.1 |
| 8/27/13 | File+serve mtn to amend opposit to dismiss | 0.1 |
| 8/27/13 | draft 2nd motion to amend opposi - todism | 1.0 |
| 8/27/13 | Paginate the exhibits | 0.2 |
| 8/27/13 | Scan 2nd motion to amend Oppositn+checkScn | 0.1 |
| 8/27/13 | File and serve2nd motion to amend theoppos | 0.1 |
| 8/28/13 | drft motion to continue due proc - hearing | 0.8 |
| 8/28/13 | review and revise motion to cont - inue Hr | 0.1 |
| 8/28/13 | Scan mtn to cotninue hearing+check scanPgs | 0.1 |
| 8/28/13 | File motion to continue Due Prodess hearin | 0.1 |
| 8/28/13 | Download+review opposition to - Continue | 0.2 |
| 8/28/13 | review relvnt law for reply to - DCPSOppos | 0.5 |
| 8/28/13 | draft reply to DCPS Opposition - for Cont | 1.5 |
| 8/28/13 | Paginate expendix | 0.1 |
| 8/28/13 | revw and revise reply to DCPS - Oppositio | 0.1 |
| 8/28/13 | Scan reply to DCPS Opposition+checkScanPgs | 0.1 |
| 8/28/13 | File and serve reply to DCPS Opposition | 0.1 |
| 9/2/13 | draft 4th amendment to oppositio - toDism | 1.0 |

---

8        Services & Expenses, Ex. 5 to Pl.'s Mot. [Dkt. # 10-5].

| 9/2/13 | review and revise opposition to - mtntodis | 0.1 |
|--------|---------------------------------------------|-----|
| 9/2/13 | Scan 4th amendment to Opposition | 0.1 |
| 9/2/13 | Paginate exhibits | 0.1 |
| 9/2/13 | File motion and serve AGG and Hearing | 0.1 |
| 9/4/13 | Forward amended complaint | 0.1 |
| 9/5/13 | drft 2nd motion to expedite hrin - . | 1.0 |
| 9/6/13 | draft 2nd motion for expedit hrn - +advanc | 1.0 |
| 9/6/13 | draft 5th Amendment to Opposit - Dismiss | 0.4 |
| 9/6/13 | Paginate appendx to 5th amended opposition | 0.2 |
| 9/6/13 | Scan 5th amended opposition+revw scanpages | 0.1 |
| 9/6/13 | File 5th amended opposition+serve Jaffe | 0.1 |
| 9/9/13 | drft 2nd motion for expedited - hrng | 2.5 |
| 9/9/13 | Select and organize exhibits | 0.5 |
| 9/10/13 | draft mtns to expedite-advance hr | 1.5 |
| 9/10/13 | Paginate exhibits+include pagintn in Mtn | 0.5 |
| 9/10/13 | Scan and check motion and exhibits | 0.2 |
| 9/10/13 | File motion to expedite and serve AGG | 0.1 |
| | **Total** | **24.8** |

## APPENDIX B: CLERICAL AND PARALEGAL WORK

| Date | Description (*as it appears on plaintiff's invoice*[9]) | Hours |
|---|---|---|
| 7/27/13 | Organize 1000 pages of records - Frcomplnt | 1.0 |
| 7/27/13 | Organize 1000 pages for append - Forcompln | 1.0 |
| 7/28/13 | Organize 1000 pages for compaint | 0.5 |
| 7/28/13 | Scn documnts to be sent toBooker+rvw scan | 0.1 |
| 7/29/13 | send out admission packages to - RTC's | 2.0 |
| 7/30/13 | forward records to DCPS at Youth - ServCtr | 0.1 |
| 7/30/13 | Fax 500 pages of complaint for service | 1.0 |
| 7/30/13 | Paginate exhibits | 0.2 |
| 8/1/13 | Numerate 450 pages separated into 6 docume | 0.5 |
| 8/1/13 | Scan 470 pages into 6 documnts+revw ScanPg | 1.0 |
| 8/2/13 | File 7 prt complnt with stdnt hring office | 0.4 |
| 8/2/13 | Paginate exhibits for disclosure | 0.5 |
| 8/3/13 | Paginate exhibits for disclosure | 1.0 |
| 8/3/13 | Fax complaint to DCPS | 0.8 |
| 8/4/13 | paginate disclosure appendix | 1.0 |
| 8/4/13 | Fax complaint to DCPS | 0.8 |
| 8/5/13 | forward 7 part complaint to - Jaffe AAG | 0.1 |
| 8/5/13 | Scan clarification of school pleading | 0.1 |
| 8/5/13 | File clarification pleading | 0.1 |
| 8/5/13 | Fax clarifican of complaint to DCPS | 0.1 |
| 8/5/13 | Reorganize client file with pagination | 0.3 |
| 8/5/13 | send referral package to RTC - Californ | 0.1 |
| 8/5/13 | Frwrd complnt to Hearing Office +Jaffe | 0.1 |
| 8/6/13 | forward RTC's interested to - Barclay | 0.1 |
| 8/8/13 | Forward referral package to Elwyn | 0.1 |
| 8/8/13 | Paginate exhibits | 2.5 |
| 8/8/13 | Paginate exhibits | 0.5 |
| 8/9/13 | Check pagination of all exhibits | 1.4 |
| 8/9/13 | review and revise table of cont - ents | 0.5 |
| 8/9/13 | Illonois RTC-find address - OfNurs - Tel | 0.1 |
| 8/9/13 | forward referral package to Ohio - RTC | 0.1 |
| 8/9/13 | frward referral to New Mexico - RTC | 0.1 |
| 8/9/13 | Frward email to Booker for consultation | 0.1 |
| 8/9/13 | Frward 6 prt disclos+table of CntnstoBooke | 0.3 |
| 8/9/13 | create list for finding RTC's - contacted | 0.3 |
| 8/9/13 | forward list serve of RTC's to - team | 0.1 |

---

9      Services & Expenses, Ex. 5 to Pl.'s Mot. [Dkt. # 10-5].

| | | |
|---|---|---|
| 8/10/13 | Forward referral packages to RTC's | 0.1 |
| 8/12/13 | update list of RTC contacts | 0.1 |
| 8/13/13 | forward summary to teammembers | 0.1 |
| 8/15/13 | Forward original complaintin word to Roth | 0.1 |
| 8/27/13 | frwrd letter of Vermnt Acceptanc - toJaffe | 0.1 |
| 8/27/13 | forward to Jaffe attempts to - contactDCPS | 0.1 |
| 8/27/13 | Scan psychiatric,acceptance letter+revwScn | 0.1 |
| 8/27/13 | Download LDL v. District of Co | 0.1 |
| 8/29/13 | Scan 3 psychiatric examinatns+checkScanPgs | 0.1 |
| 8/29/13 | draft list serve tosend evaluati | 0.1 |
| 8/29/13 | forward evaluations to DCPS | 0.1 |
| 8/29/13 | draft RTC's contacted for DCPS | 0.2 |
| 8/29/13 | Send list of contacts to DCPS | 0.1 |
| 8/30/13 | Scn notic of waivr of resoltn mtng+chckPag | 0.1 |
| 8/30/13 | File notice of waiverof resolution meeting | 0.1 |
| 8/30/13 | Fowrd to Booker waiver of resol and MUA | 0.1 |
| 9/3/13 | forward ICPC to Jaffe and DCPS | 0.1 |
| 9/4/13 | Xerox and collate 8 copies (40 sheets) | 0.1 |
| 9/6/13 | Scan birt certificate and social security | 0.1 |
| 9/6/13 | Email birth cert and social secruity # | 0.1 |
| 9/11/13 | Paginate exhibits | 0.4 |
| 9/11/13 | Scan 60 pges andreview scanned pages | 0.2 |
| 9/11/13 | File update | 0.1 |
| 9/13/13 | Scan IEP+acceptance letters+check ScanPags | 0.1 |
| 9/13/13 | email acceptance letter and IEP - to DCPS | 0.1 |
| 9/13/13 | Obtain email address of Chevot - PIW Witn | 0.1 |
| 9/13/13 | create list serve of teachers/wi - atWilso | 0.1 |
| 9/16/13 | Scan+check mtn for Notice to AppearShustik | 0.1 |
| 9/16/13 | File motion for notice to appear | 0.1 |
| 9/17/13 | Scan motion for motion for notice to appea | 0.1 |
| 9/17/13 | File motion for notice to appear | 0.1 |
| 9/17/13 | Scan motn fr notice to appear +checkScanPg | 0.1 |
| 9/17/13 | File motion for notice to appear | 0.1 |
| 9/17/13 | Scan mtn for notice to appear+checkScan | 0.1 |
| 9/17/13 | File motion for notice to appear | 0.1 |
| 9/17/13 | Scan notice to appear | 0.1 |
| 9/17/13 | File motion for notice to appear | 0.1 |
| 9/17/13 | Scan mtn fornotice to appear+revwScanPages | 0.1 |
| 9/17/13 | File notice to appear Bergan | 0.1 |
| 9/17/13 | File motion for ntoice to appear Craig | 0.1 |
| 9/17/13 | Download DCPS motion to strike | 0.1 |

| | | |
|---|---|---|
| 9/19/13 | Paginate exhibits | 0.5 |
| 9/20/13 | Scan reply to oppostn+oppositnTo StrikMtn | 0.1 |
| 9/20/13 | File reply and opposition to motion to str | 0.1 |
| 9/20/13 | Download prehearing order - Email | 0.1 |
| 9/22/13 | Scan 7 mtns fr Notice to Appear+check scan | 0.4 |
| 9/22/13 | email notices to appear to 6 wit - esses | 0.5 |
| 9/22/13 | prepare 6 fax transmittal sheets - frNotic | 0.4 |
| 9/22/13 | add to table of contents | 0.5 |
| 9/23/13 | Fax 6 notices to appear to witnesses | 0.3 |
| 9/23/13 | Obtain fax number to DCPS Offi - Of SpecEd | 0.1 |
| 9/23/13 | Attach emails and fax transmission sheets | 0.3 |
| 9/23/13 | Paginate new exhibits | 2.0 |
| 9/25/13 | Scan new exhibits | 0.1 |
| 9/25/13 | Paginate new exhibits | 0.7 |
| 9/25/13 | Forward disclosure to Dr. Booker and witne | 0.1 |
| 9/25/13 | update table of contnts withNew - exhibits | 0.5 |
| 9/25/13 | File and serve 8 emails of 650 pgsof discl | 0.5 |
| 9/26/13 | File objections | 0.1 |
| 9/26/13 | Download curriculum vitae - Email | 0.1 |
| 9/26/13 | File proposed amendment to pretrial herai | 0.1 |
| 9/26/13 | Paginate exhibits | 0.3 |
| 9/26/13 | Scan amended disclosure+exhibits+chckScan | 0.1 |
| 9/26/13 | File amended disclosure and exhibits | 0.1 |
| 9/26/13 | create list serve of all witness - DProHrn | 0.5 |
| 9/26/13 | Email and reemail 8 disclosures | 0.8 |
| 9/28/13 | Have 600 exhibits xeroxed and bound+review | 0.5 |
| 9/29/13 | Tabulate 84 exhibits for hearing officer | 1.0 |
| 9/29/13 | Scan expert examin of Dr. Day and attachme | 0.1 |
| 9/29/13 | Ms. Wilson arrange for fax - Tel | 0.1 |
| 9/29/13 | Ms. Merrick fax ready - Tel | 0.1 |
| 9/29/13 | Fax direct examination | 0.1 |
| 9/29/13 | Serve questions | 0.1 |
| 9/29/13 | Split disclosure email 6 (165pages) in 2 pa | 0.3 |
| 9/30/13 | Print out all email transmissions of discl | 0.3 |
| 10/1/13 | Download vocational attachm - ToVermont | 0.1 |
| 10/1/13 | Scn vocation attchment on trad schl+chckPa | 0.1 |
| 10/2/13 | Scan exhibits for Opshal testim+chckScnPag | 0.1 |
| 10/2/13 | email Opsahl exhibits | 0.1 |
| 10/2/13 | Forward 9 emails on disclosure to Opsahl | 0.2 |
| 10/3/13 | Forwd 9 discl emails to Elliot for testimo | 0.2 |
| 10/15/13 | Fowrd HOD to Dr. Bookerfor analysis | 0.1 |

| | | |
|---|---|---|
| 10/15/13 | Obtain all email addresses+frwd HOD | 0.1 |
| 10/17/13 | Forward revised HOD to Dr. Booker | 0.1 |
| 10/21/13 | Frward materisl on Vermont Schl toBowden | 0.1 |
| 10/21/13 | Scan list of facilities researched | 0.1 |
| 10/21/13 | Forward list to DCPS | 0.1 |
| 10/22/13 | Scan IEP recommendations | 0.1 |
| 10/22/13 | email IEP recommendations to - DCPS | 0.1 |
| 10/22/13 | email IEP recommendations to - Dr. Booker | 0.1 |
| 11/1/13 | Review and scan revised draft IEP | 0.1 |
| 11/1/13 | Forward draft IEP to all parties | 0.1 |
| 11/1/13 | Scan revised IEP and check scan pages | 0.1 |
| 11/1/13 | forward IEP to all parties | 0.1 |
| 11/1/13 | Forward Washington file to Glover | 0.1 |
| 11/2/13 | Xerox and collate 4 copies of proposed IEP | 0.1 |
| 11/4/13 | Forward client file to Walden School | 0.2 |
| 11/5/13 | Forward to DCPS bckgrnd mtrls on IEP revis | 0.1 |
| 11/11/13 | Paginate proposed IEP | 0.2 |
| 11/18/13 | forward notice of placement to - Booker | 0.1 |
| 11/19/13 | Forward Osse intent to pay to mother | 0.1 |
| 11/20/13 | Scan sgined ICPc and review scan page | 0.1 |
| 11/20/13 | Email signed ICPC to OSSE | 0.1 |
| 11/21/13 | Forward OSSE correspondence to Edmunds | 0.1 |
| 11/25/13 | Forward location of placement Booker | 0.1 |
| 12/4/13 | Forward notice of placement to mother and | 0.1 |
| | **Total** | **39.0** |